STATE OF NEBRASKA EX REL. THOMASCENE STORZ, APPELLANT, V. THOMAS STORZ, APPELLEE.
455 N.W.2d 182

Filed May 18, 1990.   No. 89-394.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellant.

Kent F. Jacobs, of Blevens & Jacobs, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The State of Nebraska purportedly initiated this action on relation of Thomascene Storz to establish her former husband, defendant Thomas Storz, as the father of her son, Andrew T. Storz, and to collect from defendant support for said child. The mother appeals from the decree awarding custody of the child to his father, asserting, among other things, that the court below lacked jurisdiction. The record establishing that the court below acted without subject matter jurisdiction, we remand with the direction that the cause be dismissed.

While the petition alleges that the mother was receiving aid to dependent children from the State through its Department of Social Services and that she had assigned to that agency her right to support from the father, no evidence was adduced which established either of those assertions. That being so, we treat the suit as one filed by the mother in her own right.

In his answer, the father admitted the assertions in the petition:

> 3. That [the mother] and [he], although divorced in September, 1983, did from December, 1983 to March, 1984, engage in sexual intercourse on a number of occasions.
>
> 4. That as a result of said sexual intercourse [the mother] gave birth to [the child] on the 1st of October, 1984.

5. That the aforementioned [child then resided] with the [mother].

In addition, despite the fact that he also specifically admitted paternity but had not challenged the mother's custody of the child until he was sued for support money, the father sought sole custody of the child and affirmatively alleged that the mother was an unfit parent.

On the morning of March 1, 1988, pursuant to the father's motion requesting temporary custody of the child and apparently because the mother had been evicted from her apartment, the court below granted the father temporary custody of the child. Later that morning, while the mother was in the process of moving, the father appeared at her residence with "two sheriff's officers" and seized physical custody of the child. The mother was apparently unaware of the order changing custody of the child until the father arrived to take him.

On the afternoon of that very same day, the mother appeared in court, testified that she had secured employment and a residence in Ogallala, and requested that the court return the child to her custody. The court below denied this request, this time citing an isolated incident in which the then $3^{1}/_{2}$-year-old child had requested to stay with the father at the latter's place of employment rather than leave with the mother.

Two weeks later, on March 14, 1988, the court below conducted a hearing allowing the mother to show cause to terminate the father's temporary custody of the child. The mother presented evidence that the father had a history of alcohol abuse; that he, prior to gaining custody of the child, had been physically abusive to her and to the child; and that the father had previously been convicted of assaulting her. Despite the father's history of alcoholism and abusiveness, the court below continued its prior order leaving the child in the father's temporary custody, again citing the occasion on which the child had expressed a desire to stay with the father.

On July 25, 1988, the mother filed a motion requesting that the court below "vacate and set aside" its order of temporary custody. At an August 11, 1988, hearing on this motion, the mother introduced, and the court below received into evidence,

a copy of the decree rendered by the district court for Hall County on September 22, 1983, dissolving the marriage between the father and mother. Noting that the decree did not become final until 6 months later, the mother argued the record established that the child was conceived while she and the father were still married. She then argued that because the child was a product of the marriage and because the dissolution decree was entered in Hall County, the custody issue was one to be decided by the district court for Hall County rather than by the court below. The court below overruled this motion, indicating that it acquired jurisdiction over the custody issue as a result of its jurisdiction over the paternity issue.

After conducting a trial to determine which party should have permanent custody of the child, the court below issued a decree which was filed on March 28, 1989, declaring that "[b]oth parties are fit and proper persons to have the care, custody and control of [the child] but it is in his best interest that his care, custody and control be awarded to [the father] subject to visitation by [the mother]."

In addition to the father's admission in his answer that he and the mother engaged in sexual intercourse during the 6 months following the entry of the dissolution decree, the undisputed evidence received by the court below at the hearing to show cause why the father's custody of the child should be terminated revealed that the mother was pregnant with the child in January 1984.

Recalling that the Hall County dissolution decree was rendered on September 22, 1983, the marriage continued for 6 months following that date, until March 22, 1984. See, Neb. Rev. Stat. § 42-372 (Reissue 1988); *Choat v. Choat*, 218 Neb. 875, 359 N.W.2d 810 (1984). Consequently, the record establishes that the child was conceived while the father and mother were married.

Because the father and mother were married when the child was conceived, the child is their legitimate son, and he is a product of their marriage. See Neb. Rev. Stat. § 42-377 (Reissue 1988), which states, in part: "Children born to the parties, or to the wife, in a marriage relationship which may be dissolved or annulled pursuant to sections 42-347 to 42-379,

shall be legitimate unless otherwise decreed by the court . . . ." See, also, *Alber v. Alber*, 93 Idaho 755, 472 P.2d 321 (1970); *Kuhns v. Olson*, 258 Iowa 1274, 141 N.W.2d 925 (1966).

Mindful that the child is one born of the marriage between the father and mother, we note that Neb. Rev. Stat. § 42-351(1) (Reissue 1988) provides:

> In proceedings under sections 42-347 to 42-379, the court shall have jurisdiction to inquire into such matters, make such investigations, and render such judgments and make such orders, both temporary and final, as are appropriate concerning the status of the marriage, the custody and support of minor children, the support of either party, the settlement of the property rights of the parties, and the award of costs and attorneys' fees.

In *Nemec v. Nemec*, 219 Neb. 891, 892, 367 N.W.2d 705, 706 (1985), this court held that " 'full and complete general jurisdiction over the entire marital relationship and all related matters, including child custody and support, is vested *in the district court in which a petition for dissolution of a marriage is properly filed.*' " (Emphasis supplied.) The *Nemec* court noted that once a dissolution decree is entered, the court entering that decree has continuing jurisdiction with respect to custody issues until the children are of legal age or emancipated, and determined that since no application had been made to transfer the proceeding, the district court correctly dismissed for lack of subject matter jurisdiction the petitioner's application to modify a Dodge County dissolution decree.

It is true that in this case the Hall County decree did not address the custody issue; obviously, it would not have since the child was conceived after the decree was entered. Nevertheless, the existence of a child born of the marriage would have ramifications with respect to the decree, and the court granting the dissolution has continuing jurisdiction.

No application having been made in this case to transfer the Hall County dissolution proceeding, the court below was without subject matter jurisdiction to decide issues related to the custody of the child.

In spite of the rule set forth in *Nemec*, when the court below granted temporary custody of the child to the father, it stated

that it did so pursuant to Neb. Rev. Stat. § 42-357 (Cum. Supp. 1986). Section 42-357 in part addresses temporary custody orders during the pendency of a dissolution proceeding; thus, it would seem that if the court below thought it was amending a dissolution decree that had been rendered in Hall County, it should have realized it was without subject matter jurisdiction to do so.

Later, however, when the mother challenged the jurisdiction of the court below over the case, the court stated that a custody determination was a "prerequisite for determining support" and indicated that its jurisdiction concerning the custody of the child flowed from its jurisdiction over the paternity issue. While the court below was clearly wrong in asserting that determination of custody is a "prerequisite" for determining support, see Neb. Rev. Stat. §§ 43-1401 through 43-1418 (Reissue 1988), it also erred in failing to recognize the fact that since the child was conceived during the marriage of the father and mother, it was improper to bring a paternity action rather than an action to amend the dissolution decree in order to secure support from the father.

Sections 43-1401 through 43-1418 provide parties a means to seek support via a paternity action. Section 43-1401 states, in part:

> For the purposes of sections 43-1401 to 43-1413 a child born out of wedlock is one whose parents were not married to each other at the time of its birth; *Provided*, no child shall be considered as born out of wedlock if its parents were married at the time of its conception but divorced at the time of its birth. . . . When used in said sections the word child shall mean a child under the age of eighteen born out of wedlock.

Because the child was conceived while the father and mother were married and is the product of that marriage, custody and support issues respecting the child must be determined through a modification of the dissolution decree rather than through a paternity action.

In arguing against such a holding, the father contends that because the mother invoked the jurisdiction of the court below, she is now estopped from asserting that said court lacked

374

jurisdiction respecting custody of the child. This argument ignores the axiomatic rule that the parties cannot confer subject matter jurisdiction upon a judicial tribunal by either consent or acquiescence. See, *Thomas v. Omega Re-Bar, Inc.*, 234 Neb. 449, 451 N.W.2d 396 (1990); *Black v. Sioux City Foundry Co.*, 224 Neb. 824, 401 N.W.2d 679 (1987).

The court below being without subject matter jurisdiction, the cause is remanded with the direction that it be dismissed.

REMANDED WITH DIRECTION TO DISMISS.