IN RE GUARDIANSHIP OF TRAVIS ALEXANDER ZYLA, A MINOR.
CURTIS R. KNIGHT AND THERESA A. KNIGHT, APPELLEES, V.
KELLY J. KNIGHT, APPELLANT, AND CHRISTOPHER A. KNIGHT,
APPELLEE.

555 N.W.2d 768

Filed November 22, 1996.   No. S-96-227.

Jeffrey A. Wagner, of Legal Aid Society, Inc., for appellant.

Diane B. Metz for appellees Curtis R. Knight and Theresa A. Knight.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

The county court appointed the petitioners-appellees, Curtis R. Knight and his wife, Theresa A. Knight, coguardians of Travis Alexander Zyla, the minor grandson of said Curtis R. Knight. The minor was born on May 25, 1995, unto the grand-father's son, the appellee Christopher A. Knight, and his son's wife, the objector-appellant, Kelly J. Knight. The minor's mother appealed to the Nebraska Court of Appeals, asserting, among other things, that as she had been granted temporary custody of the minor in the dissolution action she had filed in the district court against the minor's father, the county court lacked jurisdiction to appoint coguardians for the minor. On our own motion, we removed this matter to our docket in order to regulate the caseloads of the two appellate courts. We now remand with direction.

A proceeding for the appointment of a guardian is a probate matter. *Workman v. Workman*, 171 Neb. 554, 106 N.W.2d 722 (1960). Although guardianship proceedings were once reviewed de novo, *Workman, supra*, now appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995), are reviewed for error on the record, *In re Conservatorship of Estate of Martin*, 228 Neb. 103, 421

N.W.2d 463 (1988). See Neb. Rev. Stat. §§ 25-2728 and 25-2733 (Reissue 1995). However, on questions of law, we, as an appellate court, have an obligation to reach our own conclusions independent of those reached by the lower courts. See, *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996); *In re Estate of Ackerman*, 250 Neb. 665, 550 N.W.2d 678 (1996); *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996).

Because at the time the minor was born the mother was contemplating the dissolution of her marriage to the father, the minor was given as his surname the mother's maiden surname. After the minor's birth, she filed such action in the district court, which, after finding that the minor's mother was "a fit and proper person to be awarded the temporary care, custody and control of the minor" and that it was in the minor's best interests that such be done, awarded his "temporary care, custody and control" to the mother "until further order of this court." Shortly thereafter, the grandfather and his wife petitioned the county court for appointment as coguardians of the minor, alleging that he had been abandoned by his parents. The minor's mother filed an objection, but the father, who was then under a sentence of incarceration, testimonially consented to the coguardianship.

There is evidence in the county court that the minor's mother had neither stable employment nor living arrangements; that she took poor care of the minor; that she engaged in drug use prior to, during, and after her pregnancy; and that she supported her drug habit with her welfare check and by stealing and prostituting herself. Indeed, at the time of the county court proceedings, she was on probation and had on at least one occasion tested positive for methamphetamine use. The minor's guardian ad litem was of the opinion that the minor's mother probably possessed the basic ability to properly care for the minor, but that, although he did not think the mother was an "unfit" parent, the minor would nonetheless be "probably better off" in the home of his grandfather and his wife because of the stability that home provided. There is also evidence that the minor's mother shows signs and symptoms of posttraumatic stress disorder.

Finding that the minor's mother was personally deficient and lacked the capacity to parent and that her "rights of custody to [the minor] have been suspended by circumstances, thereby necessitating the appointment" of the grandfather and his wife as coguardians, the county court so ordered. In the interest of accuracy, we note that although the county court appointment refers to the coguardians as the minor's "grandparents," the fact is that the grandfather's wife is not the mother of the minor's father. In any event, after the coguardians accepted the appointment, the county court issued them letters of coguardianship.

At the time of the county court hearings, Neb. Rev. Stat. § 24-517(2) (Reissue 1995) gave the county court, as it does presently, the "[e]xclusive original jurisdiction of all matters relating to guardianship . . . of any person . . . ." Section 30-2602 further grants the county court "jurisdiction over . . . guardianship proceedings."

Section 30-2608 provides, in relevant parts, that the

> father and mother are the natural guardians of their minor children and are duly entitled to their custody . . . being themselves . . . not otherwise unsuitable. . . .
>
> . . . .
>
> The court may appoint a guardian for a minor if all parental rights of custody have been terminated or suspended by prior or current circumstances or prior court order.

We agree with the observation in *In the Matter of Aschenbrenner*, 182 Mont. 540, 597 P.2d 1156 (1979), that a guardianship proceeding is not the proper means to terminate a parent's constitutional right to the custody of her or his children. But, as we recently noted, the appointment of a guardian is not a de facto termination of parental rights, which results in a final and complete severance of the child from the parent and removes the entire bundle of parental rights. In contrast, granting one legal custody of a child confers neither parenthood nor adoption; a guardian is subject to removal at any time. *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). In that sense, guardianships are temporary and depend upon the circumstances existing at the time. See *In re Guardianship of Copenhaver*, 124 Idaho 888, 865 P.2d 979 (1993).

In view of the evidence, we have no difficulty concluding that the county court's finding that the parental rights of the minor's mother have been suspended by the then current circumstances is not erroneous. See *Stansell v. Superior Ct. In and For Cty., etc.*, 125 Ariz. 82, 607 P.2d 959 (1980) (mother's parental rights suspended as to 14-year-old daughter whose father had died and who had conflicts with stepfather, who was not welcome in mother's home, and whose mother consented to guardianship by maternal grandparents).

The difficulty is that throughout the county court proceedings, there was pending in the district court the dissolution action the minor's mother had instituted against the minor's father. The relevant jurisdiction of the district court is defined in Neb. Rev. Stat. § 42-351(1) (Reissue 1993), which provides that in dissolution proceedings, the district court "shall have jurisdiction to inquire into such matters, make such investigations, and render such judgments and make such orders, both temporary and final, as are appropriate concerning . . . the custody and support of minor children . . . ." The district court's power to make orders concerning custody also extends to placing the minor child in the custody of third parties. Neb. Rev. Stat. § 42-364(1) (Cum. Supp. 1994). Further, the district court has the power during the pendency of a dissolution proceeding to "issue ex parte orders . . . determining the temporary custody of any minor children of the marriage . . . ." Neb. Rev. Stat. § 42-357 (Reissue 1993).

Thus, while a county court has exclusive original jurisdiction over guardianships, the district court in which a dissolution action is filed has jurisdiction over matters concerning the temporary and permanent custody of the minor children of the parties to the marriage. In this latter regard, we have written that where the dissolution of a marriage is sought, the general jurisdiction over the marital relationship and all related matters, including child custody and support, is vested in the district court in which the petition for dissolution is properly filed. *State ex rel. Storz v. Storz*, 235 Neb. 368, 455 N.W.2d 182 (1990); *Nemec v. Nemec*, 219 Neb. 891, 367 N.W.2d 705 (1985); *Robbins v. Robbins*, 219 Neb. 151, 361 N.W.2d 519 (1985).

Indeed, in *Storz*, we held that inasmuch as the marital relationship continued during the 6 months immediately following the entry of the decree of dissolution, a child conceived during that period was begotten during the marriage, and, thus, issues concerning such child's custody and support were to be determined through a proceeding to modify the dissolution decree, rather than through a paternity action.

Although not directly in point, the interplay of the jurisdictions of a county court and district court is further illustrated by *Smith v. Smith*, 242 Neb. 812, 497 N.W.2d 44 (1993), wherein the natural mother's new husband sought to adopt her children. Pursuant to the provisions of Neb. Rev. Stat. § 43-104 (Reissue 1988), which required the consent of the district court having jurisdiction of the children, the natural mother moved for the consent of the district court dissolving her marriage to the children's natural father. Concluding that the natural father had not abandoned the children, the district court overruled the motion. In reversing and remanding that decision, we wrote that as § 24-517(8) (Reissue 1989) gave the county court exclusive original jurisdiction over all adoption matters, it was inappropriate for the district court to have concerned itself with the issue of abandonment. However, we also noted that the consent statute gave the district court two opportunities to influence an adoption proceeding. We observed first that while a determination of custody is not, on its face, determinative as to later petitions for adoption made by either the custodial or noncustodial parent, the district court might nonetheless have made determinations within the dissolution proceedings which would be decisive on the issue of adoption or the fitness of a parent, and it would therefore be unnecessary for the county court to rehear these issues. Second, the district court might be in a position to make nonbinding recommendations to the county court based on the former court's experience from the parties' dissolution proceedings.

Given that history, we conclude that during the pendency of a dissolution action, a county court's exclusive original jurisdiction in guardianship matters touching upon the custody of a minor must yield to the jurisdiction of the district court in which the dissolution petition is filed. It was accordingly an

abuse of discretion as a matter of law for the county court to have exercised its jurisdiction over the within petition for the appointment of coguardians. Cf. *In re Interest of Goldfaden*, 208 Neb. 93, 302 N.W.2d 368 (1981) (exclusive original jurisdiction of county court sitting as juvenile court not diminished by preexisting custody order in district court dissolution decree).

Accordingly, we remand the matter to the county court and direct that it vacate its appointment of the coguardians.

REMANDED WITH DIRECTION.

WHITE, C.J., and FAHRNBRUCH, J., dissent.