STATE OF NEBRASKA EX REL. SHARON ROSS, ALSO KNOWN AS SHARON DELAGARZA, APPELLANT, V. JAMES ARTHUR JACOBS, APPELLEE.

383 N.W.2d 791

Filed March 28, 1986.   No. 85-394.

Laureen Van Norman, for appellant.

Susan Jacobs of Healey, Brown, Wieland, Kluender, Atwood & Jacobs, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

BOSLAUGH, J.

This action was brought by the State on behalf of the petitioner, a mother of a child born out of wedlock, to establish paternity and obtain support for the child. The respondent father admitted paternity and sought custody of the minor child. The trial court found that both parties were fit and proper persons to have custody of the child, but in consideration of all the facts and circumstances it was in the child's best interests to award custody to the respondent subject to liberal visitation by the petitioner. The trial court found that the father was an able-bodied person, capable of supporting the child without contribution from the petitioner, and made no award of child support. The petitioner has appealed.

The child was born on August 25, 1980, and had been in the care and custody of the petitioner until the court ordered the change in custody on April 26, 1985. The child is the fifth illegitimate child born to the petitioner. Her other four children, ranging in age from 11 to 6, all have the same father. The petitioner testified that the four older children have not been in contact with their father because he is an alcoholic and does not set a very good example for the children.

The petitioner and her children have changed residences nine times since August of 1980. Some of the moves were necessitated by her poor financial condition. The petitioner and her children had been living in the same place in Lincoln, Nebraska, for approximately 1 year prior to trial. She has been employed by the city of Lincoln for almost a year and a half prior to trial. Her monthly gross income is $1,116.

In June 1984 the petitioner and her children resided with the respondent in his home. The parties contemplated marriage, but the petitioner wanted to first find out if it would work. After 2 weeks the respondent phoned the petitioner at his house and gave her 30 to 45 minutes to pack her and the children's belongings and move out. When he returned and found she was still there, he physically removed her from the house without allowing her time to gather her belongings.

The respondent lives in Pleasant Dale, Nebraska, and at the time of trial was working part time at a beverage store and full time as a solar-energy system salesman. Prior to April 1984, the respondent was a commercial helicopter pilot, working in the Far East and Alaska.

The respondent was made aware of the child's birth shortly after it occurred in August 1980. He sent no support for the child until the child was almost 2 years old. Thereafter, he sent support on a sporadic basis. In 1982 he sent the petitioner $820; in 1983, $800; and in 1984, only $305. His income in 1982 and 1983 was over $30,000 a year.

A guardian ad litem was appointed to make an investigation concerning the matter of custody. The guardian found the petitioner's home to be clean and adequately furnished. He did not visit the respondent's home because he was informed that it was fairly new, large, and well furnished. He assumed the respondent's living conditions were not at issue.

At the petitioner's home the guardian visited with the child whose custody is in dispute. The child appeared to be happy and told him that he really liked staying with his dad and that he really loved both his mother and father. The guardian did not have an opportunity to see the child and his father together.

The guardian testified that he was impressed with both of the parties in their own way. Upon cross-examination he testified that if custody were given to the petitioner the case should be reviewed within 6 months in view of the petitioner's unstable living arrangements in the past. He testified:

I am really basing a good deal of my opinion on the fact that Sharon Ross [petitioner] seems to have stabilized her life pretty much in the last year, but prior to that it really hadn't been too stable, and if for some reason her stability dissolves again I think it's going to make a great deal of difference on [the child's] environment.

Neither party contends that the other is an unfit person for the custody of the child. Both parties appear to love their son and want to have physical custody of him.

Although this action was commenced as a paternity proceeding, the issue now before the court is the custody of the child. The primary consideration in determining custody and

visitation is the best interests of the child. In *Cox v. Hendricks*, 208 Neb. 23, 28, 302 N.W.2d 35, 38 (1981), we said:

> In a paternity action where paternity has been admitted and the natural father has demonstrated a familial relationship with the child and has fulfilled parental responsibilities of support and maintenance, the fact that the child was born out of wedlock should be disregarded, and custody and visitation of minor children should be determined on the basis of the best interests of the children.

In *Cox v. Hendricks, supra*, we applied the standards set out in Neb. Rev. Stat. § 42-364 (Reissue 1978) for dissolution actions and noted at 27, 302 N.W.2d at 38, "The clear trend in recent cases is to disregard the fact that a child was born out of wedlock in deciding custody disputes between natural parents." See, also, *State ex rel. Laughlin v. Hugelman*, 219 Neb. 254, 361 N.W.2d 581 (1985).

Generally, custody matters are initially entrusted to the sound discretion of the trial court. On appeal they are reviewed de novo on the record and in the absence of an abuse of discretion will be affirmed. See *Parsons v. Parsons*, 219 Neb. 736, 365 N.W.2d 841 (1985).

There is substantial evidence in this case that the petitioner, in the past, has had an unstable lifestyle. On occasion she has found it necessary or convenient to leave the child with other persons for varying periods of time.

In 1982, when the child was 2 years old, the petitioner placed the child with her aunt in Missouri for something less than 2 months. Although she denies that she considered placing the child for adoption, she gave the aunt "guardianship as far as to get medical attention."

In June of 1983 the petitioner went to Texas. She took the two older children with her, but left the child involved in this case with her parents. Later, she came back to Nebraska and took the child to Texas, where she lived with Raul Delagarza. She married Delagarza after she had known him, personally, for "about a week" or "a little longer than that." She then left Delagarza, on the same day that she had married him, and returned to Nebraska.

After she had returned to Nebraska she commenced living with Virendra Singh. During June 1984, she left the child with her parents and placed the older children in the Cedars Home for Children, but the child went to the Cedars Home for day care. Her relationship with Singh has continued for about 4 years, and during this time she has had some kind of a relationship with Mike Burgess.

Although the respondent has been slow in establishing a familial relationship with the child, and his past contributions to support were less than generous, from our examination of the record we conclude that it fails to show an abuse of discretion. The judgment is, therefore, affirmed.

AFFIRMED.