REBEKAH B. SNODGRASS, APPELLEE, V. KELLY R. SNODGRASS, APPELLANT.

486 N.W.2d 215

Filed July 17, 1992.   No. S-89-1174.

Paul W. Deck, of Deck & Deck, for appellant.

No appearance for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Respondent, Kelly R. Snodgrass, appeals an order of the district court for Dixon County. The order dismissed appellant's application to modify the divorce decree entered in this case, in which application he sought custody of one of the two children named in the decree, and he also sought to determine that one of the two children named in the decree was not his child.

In his brief, appellant assigns two errors: (1) "That the trial court erred in finding that the Respondent's conduct was so willful and contumacious as to deny him access to the Court under the Unclean Hands doctrine embraced in *Voichoskie v. Voichoskie*," 215 Neb. 775, 340 N.W.2d 442 (1983), and (2) "The Court erred in holding that the Respondent cannot now ask the Court to determine paternity . . . four years after the dissolution proceeding." We affirm.

The record shows the following facts: A decree dissolving the marriage of Rebekah B. Snodgrass and appellant was filed by

the Dixon County District Court on May 23, 1984. The decree, dated January 25, 1984, ordered the custody and control of the two minor children of the marriage to be continued in the court, with physical possession in appellee. Appellant was granted visitation rights "at reasonable times and reasonable places." The decree of the court ordered that appellant pay $125 per month per child for support of the minor children of the parties. No appeal of the decree was ever taken on any issue. On May 9, 1984, the court reduced the child support obligation to $100 per child, commencing June 1, 1984.

Appellant was later served an order to show cause why he should not be found in contempt of court for failure to pay child support. After a hearing on April 11, 1988, the court found that appellant had the ability to pay child support "either in whole, or in part," and that appellant had willfully failed to make child support payments. The court further ordered that appellant could purge himself of contempt "by paying $3,000 on the delinquencies on or before the 9th day of May and continue [sic] to make regular payments." The hearing was continued to May 9, 1988.

The record does not show any further hearings on the contempt issue except the judge's minutes, which show that on May 9, 1988, sentencing was continued to August 8, and then continued to September 12. On September 12, the minutes show the following: "Payments of $200.00 month having been made, sentencing deferred till further Order of Ct."

On December 19, 1988, appellant, through a different attorney, filed the application to modify the decree described above. The application alleged that the older of the two children was not fathered by appellant; that appellant had had "considerable difficulty in obtaining specific and definite rights of visitation"; that appellee had not discharged her debts as ordered in the decree, forcing appellant into bankruptcy; and that

> [b]ecause of [appellant's] lack of obtaining steady employment and because of the [appellee's] failure to discharge her debts (placing this responsibility upon him), he has become arrears [sic] in his child support payments; that the [appellee], by contrast, has had steady income and

earnings; that the [appellant] has incurred a sizeable amount of past due child support and cannot possibly reduce that unless he is given some opportunity to apply a portion of the sum of future child support payments on the arrearage until that is paid.

Appellant then prayed for a paternity determination as to one of the children and for custody of the other child.

Appellee filed a motion to dismiss appellant's application. Appellee referred to the court's order of contempt of April 11, 1988, and noted that appellant was in arrears on child support in the sum of $8,005. Appellee contended that appellant's motion should be dismissed because appellant failed to come to equity court with clean hands.

Appellant's response to this motion asserted that "the exact amount of arrearage in child support is in dispute" and that the finding of contempt "does not seem to bear support in accordance with the very limited record," in that there was no basis for the court's ruling that appellant willfully failed to pay his support obligations. Finally, he alleged that he "was making honest effort[s] to render steady payments."

On March 23, 1989, the court conducted a hearing on appellant's application. By an entry in the trial docket on March 23, the court ordered that the application be dismissed "as the [appellant] is seeking equity from the [appellee] when he is not in equity himself."

On April 13, 1989, appellant filed a "Motion to Vacate Decision and Grant Hearing." The motion, as its contents are liberally construed, shows that this pleading should be construed as a motion for new trial and that it operates to extend the time for the filing of a notice of appeal. The motion was overruled on August 14, 1989. Appellant timely appealed the decision to this court.

Appellant's first assignment of error asserts that "the trial court erred in finding that the Respondent's conduct was so willful and contumacious as to deny him access to the Court . . . ."

Appellate review of a judgment concerning modification of a marital dissolution decree is de novo on the record to determine whether the trial court abused its discretion concerning modification. *Huffman v. Huffman*, 236 Neb. 101,

459 N.W.2d 215 (1990).

Appellant urges that the application of the doctrine followed in *Voichoskie v. Voichoskie*, 215 Neb. 775, 340 N.W.2d 442 (1983) (*Voichoskie I*), would be "untenable and amount to denial of justice depriving a party of a substantial right." Brief for appellant at 31. In *Voichoskie I*, this court reversed and remanded a decision by the trial court to dismiss an application to modify a decree. The trial court found that the petitioner's failure to pay over $3,000 in delinquent support before seeking a modification of his support payments was a failure to do equity. We held that the application alleged a change in circumstances and an inability to make the payments, and it was therefore reversible error for the trial court, without a hearing, to fail to determine whether the petitioner was able to pay the arrearages or unable to pay due to some intentional conduct on his own part.

After remand, Voichoskie's application was again denied, and he again appealed to this court.

In *Voichoskie v. Voichoskie*, 219 Neb. 670, 365 N.W.2d 467 (1985) (*Voichoskie II*), the record showed that appellant earned $370 per week at the time of his divorce, but since that time the court found that "the respondent has often been content to live on unemployment and has not made a substantial effort to obtain employment at a salary equal to the one he received at the time of his divorce." *Id*. at 672, 365 N.W.2d at 469.

We then affirmed the trial court's denial of modification, applying the principle set out in *Voichoskie I*, 215 Neb. at 779, 340 N.W.2d at 445: "If the evidence shows that the petitioner is able to pay the arrearage or is unable to pay through some intentional conduct on his part, the doctrine of clean hands may be invoked to bar his claim for relief." Regarding the doctrine of clean hands, we have stated:

> " ' "Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." ' . . ."

*Brown v. Alron, Inc.*, 223 Neb. 1, 7, 388 N.W.2d 67, 72 (1986).

The record in this case is clear. In 1984, appellant received an average of approximately $739 per month gross pay (including 3 months of unemployment compensation) and made total payments of $1,000. In 1985, he received a gross average of approximately $692 per month (including another 3 months of unemployment compensation) and paid no child support.

In 1986, appellant earned approximately $720 per month gross pay at a steady job. In 1987, his gross earnings were approximately $1,000 per month. He made no payments at all during these 2 years.

Appellant testified, on direct examination, at his contempt hearing:

Q. . . . Looking at Exhibit No. 1 [the child support payment record], I'll ask you to state whether or not it's a correct record of all payments you have been [sic] paid to the clerk's office?

A. Yes, it is.

Q. . . . [W]hy was it that you did not make any payments for child support from October of 1985 to the present time [April 11, 1988] since you have been employed?

A. There was [sic] a lot of times I never even knew where the children were at.

Q. I see.

A. I know that isn't a good enough excuse, but that's the reason why.

. . . .

A. . . . I know it's my fault that I'm behind. . . .

Q. Mr. Snodgrass, what attempt, if any, have you made on any support since the divorce decree to the present time?

A. Well, I really haven't made any attempt.

On cross-examination, appellant confirmed that the only two payments of any kind into the court for child support in 1985 and 1986 were applied by the IRS from his tax refunds. As of April 11, 1988, appellant was in arrears for $7,729.

As stated above, on April 11, 1988, the court found appellant in contempt for willfully failing to pay child support, and the

court stated appellant could purge himself of contempt by paying $3,000 on or before May 9, 1988, and by resuming his regular child support payments. Between April 11 and May 9, appellant paid $275. The court, in two successive journal entries, continued appellant's sentencing until September 12, 1988. By this time, he had paid $980 (not including a tax refund offset of $394 paid by the IRS) to the court clerk. On September 12, the court continued sentencing until further order of the court. On September 27, appellant made a payment of $150 to the court. This was the last payment made in 1988.

On December 19, 1988, appellant filed an application to modify the decree. At the time, he was in arrears for $8,005, having paid only $1,524 of his obligation for the year (all but $150 of which was paid while contempt sentencing was pending).

The record shows only one payment, of $50, made in January 1989, before appellant's application was dismissed. In a memo on its ruling, the court stated that it would "certainly reconsider this matter when the respondent has made some showing of good faith."

We note that an invocation of the doctrine of unclean hands in this case does not link the payment of child support to the rights of a parent to exercise visitation. The two are independent. It is strictly appellant's flagrant and continuing contempt of court which precludes him from obtaining relief.

Appellant's conduct since the dissolution of the marriage has been to pay no child support unless compelled by the court, in spite of a work record which, although not steady, has been consistent, except for a 6-month period of unemployment. Appellant seems to justify this withholding of child support by repeatedly stating that he was having difficulties exercising his visitation rights. This is not an acceptable excuse.

Our de novo review of the record, including appellant's own testimony, shows adequate support for the trial court's ruling. Appellant's first assignment of error is without merit.

Appellant, in his second assignment of error, asserts, "The Court erred in holding that the Respondent cannot now ask the Court to determine paternity . . . ."

In a motion seeking blood testing filed on January 31, 1989,

(18 days after his last payment of $50), appellant alleged that at the time of the dissolution proceedings, "I had suspicion that [appellee's older son] was not my son." He went on to allege that the issue of paternity was raised in the pleadings by denial of paternity in appellant's answer to appellee's petition, but that "the matter was never addressed by the court." Appellant stated that, at the time, his attorney stated there was not sufficient evidence to pursue a paternity dispute.

Now, based on alleged recent assertions by appellee and the child, appellant states, "I am convinced I am not the boy's father."

In *State ex rel. Storz v. Storz*, 235 Neb. 368, 371, 455 N.W.2d 182, 184 (1990), this court stated: "Because the father and mother were married when the child was conceived, the child is their legitimate son, and he is a product of their marriage."

Appellant chose not to assert that the older child was not his at any time until after appellant had been determined to be in contempt. Paternity was determined by the court in the original decree herein. That determination was not appealed and is, therefore, final. Appellant raises no new facts or circumstances which require the district court to reopen the decree. Appellant's second assignment is without merit.

Having found no merit in either of appellant's assignments of error, we affirm the decision of the district court.

AFFIRMED.