STATE OF NEBRASKA ON BEHALF OF TAYLAR CHAE PATHAMMAVONG,
A MINOR CHILD, APPELLEE, V. SEANGSOURIYAN PATHAMMAVONG,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE, AND
MANDY J. STRUEBING, THIRD-PARTY DEFENDANT, APPELLANT.
679 N.W.2d 749

Filed May 21, 2004.   No. S-02-1370.

(1)

Darik J. Von Loh, of Hernandez, Frantz & Von Loh, for appellant.

Bradley T. Kalkwarf, and, on brief, Vicky L. Johnson for appellee Seangsouriyan Pathammavong.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The appellant, Mandy Struebing (Mandy), and the appellee, Seangsouriyan Pathammavong (Sean), are the natural parents of Taylar Chae Pathammavong (Taylar), a minor child, who was born out of wedlock. Mandy appeals from an order of the district court for Saline County awarding permanent custody of Taylar to Sean.

# I. BACKGROUND

Mandy gave birth to Taylar on August 25, 1995. In paternity proceedings instituted by the State of Nebraska on behalf of Taylar, the district court for Saline County entered an order on January 8, 1996, finding Sean to be Taylar's father and ordering him to pay child support.

Mandy, Sean, and Taylar lived together, initially in Nebraska and then in Texas, from the time Taylar was 2 months old until she was approximately 2 years old. In October 1997, Mandy took Taylar to live with her and a male companion in Arlington, Texas, approximately 20 miles from where Sean was then living. They remained there for approximately 1 year and then moved to Mansfield, Texas, located approximately 35 miles from Sean's residence. Mandy returned to Nebraska with Taylar in June 1999, without giving prior notice to Sean. During the ensuing 3 years, Mandy and Taylar lived in at least five different locations in Sprague and Crete, Nebraska.

During this period, the parties had an informal arrangement whereby Sean would have visitation with Taylar at Christmas and one or two other times per year in Nebraska, usually on major holidays. In addition, Taylar would spend between 4 to 8 weeks with Sean in Texas each summer. Sean testified that he would call Taylar approximately twice each month but was often unable to reach her because either the telephone had been disconnected or Mandy had moved without informing him.

On November 26, 2001, Mandy was convicted of driving while under suspension and sentenced to a period of incarceration. On May 1, 2002, while her appeal was pending but in anticipation of her incarceration, Mandy executed a power of attorney authorizing her mother, Cynthia Boshart, to have the care and custody of Taylar for a period of 6 months. Sean was not informed of Mandy's conviction or the possibility of her incarceration. Mandy lost her appeal and was incarcerated for a period of 60 days from June 11 to August 8. Mandy and members of her family concealed this information from Sean. During Mandy's incarceration, Boshart told Sean that Mandy was in Ogallala, Nebraska, taking care of a sick relative and that Taylar's summer visitation was to be limited to only 1 week. When Sean tried to contact Mandy to request more time with Taylar, he was unable to reach her. Sean

kept Taylar in Texas and contacted his former attorney in Nebraska to assist him in determining Mandy's whereabouts. This inquiry led to Sean's discovery of Mandy's incarceration.

When Sean did not return Taylar to Nebraska as Boshart had instructed, she filed a petition in Lancaster County Court seeking to be appointed Taylar's guardian. A hearing was held on the guardianship petition on July 30, 2002, at which both Boshart and Sean appeared. The matter was continued, but was ultimately dismissed before the next scheduled hearing.

On August 5, 2002, Sean filed an ex parte application in the district court for Saline County in which he sought temporary and permanent child custody and child support. The court granted Sean temporary custody and set a permanent custody hearing, which hearing was continued at Mandy's request. At the September 26 hearing, Sean and Mandy presented evidence in support of their respective claims for permanent custody of Taylar. In an order entered on October 30, the district court determined that it was in Taylar's best interests to remain in Sean's custody, subject to Mandy's reasonable rights of visitation. The order directed that Mandy was to "pay her own costs with regard to visitation." However, in ordering her to pay child support in the amount of $215 per month, the court noted that this amount represented a "deviation of $50.00 per month from the Nebraska Child Support Guidelines as a visitation expense for the benefit of [Mandy]." The district court awarded Sean the right to claim the income tax exemption for Taylar. Mandy perfected this timely appeal.

## II. ASSIGNMENTS OF ERROR

Mandy assigns, consolidated and restated, that the district court erred in (1) granting Sean's ex parte temporary custody order, (2) awarding Sean permanent custody of Taylar, (3) failing to grant Mandy specific parenting time, (4) granting Sean the income tax exemption for Taylar, and (5) ordering Mandy to provide visitation transportation when it did not grant her a deviation from the Nebraska Child Support Guidelines.

## III. STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record

to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); *Lancaster v. Brenneis*, 227 Neb. 371, 417 N.W.2d 767 (1988).

■ An award of a dependency exemption is reviewed de novo to determine whether the trial court abused its discretion. See *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

## IV. ANALYSIS

### 1. EX PARTE TEMPORARY CUSTODY ORDER

Mandy argues that the trial court erred in granting Sean's ex parte temporary custody order because he failed to plead those facts required under Neb. Rev. Stat. § 43-1209 (Reissue 1998), see, currently, Neb. Rev. Stat. § 43-1246 (Supp. 2003) of the Uniform Child Custody Jurisdiction and Enforcement Act, and because he neither requested the court's permission to remove Taylar from Nebraska during the pendency of the action, nor notified the court that he would be doing so.

It is undisputed that the application for temporary and permanent custody filed on behalf of Sean in the Saline County District Court lacked certain information required by § 43-1209, including Taylar's whereabouts for the preceding 5 years and the fact that Sean was living in Texas, not Nebraska. In addition, the application failed to disclose the pending guardianship proceeding in Lancaster County. At the hearing on the ex parte motion, Sean's attorney acknowledged that she had mistakenly failed to include such information.

■ Sean argues on appeal that the trial court did not err in granting his ex parte temporary custody order, which did not greatly differ from his normal summer visitation schedule with Taylar, and that even if it was erroneous, the temporary order was rendered moot when the permanent custody order was entered on October 30, 2002. A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Rath v. City of*

*Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004); *Stoetzel & Sons v. City of Hastings*, 265 Neb. 637, 658 N.W.2d 636 (2003). The issue of whether the temporary order was granted in error was relevant only from the time it was ordered until it was replaced by the order determining Taylar's permanent custody placement. Therefore, the issues pertaining to the ex parte order are moot and need not be addressed in order to resolve this appeal.

## 2. PERMANENT CUSTODY

Mandy contends that the district court erred in awarding permanent custody of Taylar to Sean because (1) Sean failed to meet the two-part test laid out in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), for removal of a child from the jurisdiction of this state, (2) Sean came before the court with unclean hands because he was over $5,000 in arrears on his child support obligation, and (3) it was not in Taylar's best interests to change custody.

### (a) Legal Standard

Mandy argues that the two-part test from *Farnsworth, supra*, most recently applied in *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002), is applicable in this case. The test requires a custodial parent who is seeking permission to relocate to another state with a minor child to prove that the parent has a legitimate reason for leaving the state and that such a move is in the best interests of the child. Unlike *Farnsworth* and *Vogel*, however, this case does not concern parental relocation or the modification of a previous court-ordered custody agreement. The order before us on appeal is the first court order assigning custody to one parent or the other, and therefore modification was never an issue. In addition, the parents in this case have lived over 600 miles apart for a number of years prior to the custody determination. The issue before the district court was not whether one or the other of the parents was free to relocate with the child, but, rather, which parent should be awarded permanent custody of Taylar as a matter of initial judicial determination. This question must be resolved on the basis of the fitness of the parents and the best interests of the child. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); *Lancaster v. Brenneis*, 227 Neb. 371,

417 N.W.2d 767 (1988). Accordingly, the district court was not required to apply the *Farnsworth* standard in resolving the disputed custody issue in this case.

### (b) Unclean Hands

■ Mandy argues that because Sean was not current on his child support obligation, he should have been barred from seeking custody under the doctrine of unclean hands. With respect to that doctrine, we have stated:

> " ' "Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." ' "

*Marr v. Marr*, 245 Neb. 655, 658, 515 N.W.2d 118, 120 (1994), quoting *Voichoskie v. Voichoskie*, 215 Neb. 775, 340 N.W.2d 442 (1983). Generally, issues of child support and custody are treated as separate and distinct issues. See *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000). We have also held that when a party owes past-due child support, the failure to pay must be found to be a willful failure to pay, in spite of an ability to pay, before an application to modify child support may be dismissed on the basis of unclean hands. *Marr, supra*; *Voichoskie, supra*.

Mandy relies on *Snodgrass v. Snodgrass*, 241 Neb. 43, 486 N.W.2d 215 (1992), in which a noncustodial father, after having been found to be in willful contempt of court for failure to make child support payments for his two minor children, filed an application to modify the divorce decree. In the application, he alleged that he was not the father of the older child and sought a paternity determination as well as custody of the younger child. The mother of the children successfully contended that the application should be dismissed on the ground that the petitioner had failed to come to the court with clean hands by virtue of the contempt order and child support arrearage. In affirming the district court's dismissal of the application, we determined that it was supported by a record which showed that the "[father's] conduct since the dissolution of the marriage has been to pay no child support unless

compelled by the court" and that it was his "flagrant and continuing contempt of court" which precluded him from obtaining relief. *Snodgrass*, 241 Neb. at 48, 486 N.W.2d at 218.

At the time of the hearing in this case, Sean had recently returned to his job as an airline worker after being furloughed following the September 11, 2001, terrorist attacks. Although Sean had been paying child support for Taylar, he had done so sporadically at times and at the time of trial was over $5,000 in arrears. Since his return to work, however, Sean had been paying his current support obligation as well as making payments on the past-due amounts. Although it is undisputed that Sean was in arrears on his child support, there has never been a finding of contempt or of willful or intentional withholding of support. The record does not reflect that Sean sought custody of Taylar in order to avoid his past-due or current child support obligations. Unlike the circumstances in *Snodgrass*, this record does not reflect willful and contumacious nonpayment of child support which would bar Sean from seeking custody under the unclean hands doctrine.

### (c) Best Interests

■ Mandy contends that the district court erred in determining that it was in Taylar's best interests to be in the custody of Sean. While an unwed mother is initially entitled to automatic custody of the child, the issue must ultimately be resolved on the basis of the fitness of the parents and the best interests of the child. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). In filiation proceedings, we have applied the standards for determination of custody set forth in Neb. Rev. Stat. § 42-364(2) (Reissue 1998), thus disregarding the fact that a child was born out of wedlock in deciding custody disputes between natural parents. *State ex rel. Ross v. Jacobs*, 222 Neb. 380, 383 N.W.2d 791 (1986); *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981). Section 42-364(2) sets forth the following nonexhaustive list of factors to be considered in determining the best interests of a child for purposes of awarding custody:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child; and

(d) Credible evidence of abuse inflicted on any family or household member.

■ In determining a child's best interests under § 42-364, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

Both parents presented evidence in support of their respective claims that it was in Taylar's best interests to be placed in their permanent custody. Mandy testified that since her release from incarceration, she has been living with Boshart and working full time at a telemarketing firm. She testified that Taylar has her own room in Boshart's home. Sean testified that he was working full time at American Airlines and was living with his mother and brother in a four-bedroom home. At the time of trial, Sean was sharing a bedroom with Taylar, but he stated that depending on the outcome of the trial, it was his intention to have Taylar's own bedroom ready within a week.

The record reflects that Taylar does very well in school but that she missed an excessive number of days in kindergarten and first grade while in Mandy's custody. Mandy's explanation for the excessive absences was that Taylar "was sick a lot" and "didn't want to go" to kindergarten. Shari Keola, Sean's sister, testified that Mandy had provided daycare for Keola's four children but

that she terminated the arrangement because Mandy was either late in taking her children to school or they did not go at all. Sean testified that since she has been in his custody, Taylar is healthy and enjoys school. Sean is a member of the PTA, and also works as a substitute teacher. Sean takes Taylar to a Christian church on Sundays and also plans to introduce her to Buddhism because he feels it is important for her to understand his culture.

Each parent presented evidence disparaging the stability and moral fitness of the other. Court records reflect that from February 1994, when Mandy was still a minor, to May 2002, she has been arrested for and convicted of numerous traffic and criminal offenses. The majority of offenses with which she has been charged relate to operation of a motor vehicle and include numerous traffic and speeding violations, as well as five or six occurrences of driving under suspension. In addition, Mandy was arrested once in 2000 and twice in 2002 on charges of possession of marijuana. At the custody hearing, Mandy testified that she no longer uses marijuana and that the last time she had used it was in April of that year. Sean testified that when he visited Mandy in November 2001, he failed to recognize her because of her "weight loss and her scabbed arms and her dingy hair." Sean testified that Mandy's explanation for her appearance was that she had been using methamphetamines.

Mandy married a Mexican national in April 2002. She testified that she has known him for 3 years but that she has never lived with him and that he was deported during her incarceration. Keola testified that Mandy told her she had received $10,000 for marrying this person, but Mandy denied having received any money.

Mandy testified that Sean physically abused her on three occasions. The first occasion was May 18, 1996, when they fought over money and Sean punched or pushed Mandy after she broke a window in his car. Mandy filed a police report following the incident which led to Sean's being convicted of a Class I misdemeanor for assault. Mandy also testified that during Memorial Day weekend in 1996, she and Sean were fighting, and that he punched her in the back of the head while she was driving. Taylar and Mandy's sister were also in the car, and Mandy's sister corroborated the incident. The third incident occurred on Easter in 1997 at Sean's mother's house in Texas when they got into a fight

and Mandy testified that Sean punched her in the face. Mandy did not report either the second or third incidents to police. Sean denied that he was ever aggressive with Mandy other than the May 18, 1996, incident and testified that he feels he made a mistake in that instance and that he has matured since then.

Mandy testified that she would be a better custodial parent than Sean because she has had Taylar in her care for 7 years and that she and her family are all that Taylar knows. Sean testified that it would be in Taylar's best interests to remain in his custody because she is doing well in school, making new friends, and is living in a wholesome environment.

Our task on appeal is to determine whether the trial court abused its discretion in concluding, based upon the evidence we have summarized, that it was in Taylar's best interests to be in the permanent custody of Sean. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003); *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001). The evidence in this case reflects that while neither party has an unblemished personal record, both are fit parents who have established a familial relationship with Taylar. It appears that Taylar did well while in Mandy's custody and has continued to do well in Sean's custody. Nevertheless, there is substantial evidence that Mandy has had an unstable lifestyle marked by numerous law violations, substance abuse, and frequent changes of residence. In light of this evidence, we cannot say that the district court abused its discretion in awarding custody to Sean. See *State ex rel. Ross v. Jacobs*, 222 Neb. 380, 383 N.W.2d 791 (1986) (determining that award of custody to father was not abuse of discretion where there was substantial evidence of mother's past unstable lifestyle).

### 3. OTHER ISSUES

#### (a) Tax Exemption

Mandy contends that the district court erred in ordering that Sean shall be entitled to claim the income tax exemption for

Taylar commencing in 2002. This award is consistent with the general rule that a custodial parent is presumptively entitled to the federal tax exemption for a dependent child. See, I.R.C. § 152(e) (2000); *Hall v. Hall*, 238 Neb. 686, 472 N.W.2d 217 (1991). We have held that a Nebraska court having jurisdiction in a divorce action shall have the power to allocate tax dependency exemptions as part of the divorce decree and may order the custodial parent to execute a waiver of his or her right to declare the tax exemptions if the situation of the parties so requires. *Hall, supra.* We hold that a court having jurisdiction in a filiation proceeding possesses the same power. However, we find no circumstances in this case which would warrant departure from the presumptive rule by which the dependency exemption is allocated to the custodial parent, and we therefore conclude that the district court did not abuse its discretion in allocating the exemption to Sean.

(b) Visitation Expenses

Mandy also contends that the district court erred in instructing her to "pay her own costs with regard to visitation." She testified that because of her inability to drive, she would have difficulty with transportation for visitation if Taylar were permitted to remain with Sean in Texas, and she requested a deviation from the Nebraska Child Support Guidelines to help her "provide and pay for that cost of transportation." She argues on appeal that the district court abused its discretion when it did not grant her requested deviation.

"[T]he matter of travel expenses associated with visitation is initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion." *Vogel v. Vogel*, 262 Neb. 1030, 1040-41, 637 N.W.2d 611, 620 (2002). No case has "[set] an immutable standard for the allocation of travel expenses, and instead the determination of reasonableness is made on a case-by-case basis." *Id.* at 1041, 637 N.W.2d at 620-21.

The order of the district court expressly stated that the $215 per month Mandy was required to pay in child support "is a deviation of $50.00 per month from the Nebraska Child Support Guidelines as a visitation expense" for Mandy's benefit. We are

directed to nothing in the record which would substantiate a claim that the amount of the deviation is inadequate, and we therefore conclude that Mandy was given the relief that she requested with respect to visitation expenses.

### (c) Parenting Time/Visitation

Mandy argues that the trial court abused its discretion by awarding her "reasonable rights of visitation" with Taylar rather than specific parenting time. Generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent, and the determination of reasonableness is to be made on a case-by-case basis. *Vogel, supra.*

At trial, Mandy requested that she be awarded visitation rights every other holiday, as well as 6 to 8 weeks in the summer in the event Sean was granted permanent custody. The record reflects that when Taylar was in the custody of Mandy, the parties arranged for reasonable visitation with Sean without the necessity of a court order. Mandy testified that she had been "pretty lenient" with Sean, allowing him to see Taylar "whenever he wants," and that she had never denied him visitation. Sean indicated at trial that he likewise had no objections to Mandy's being awarded reasonable rights of visitation. The district court did not explain its reasons for ordering "reasonable rights of visitation" instead of a specific visitation schedule.

Although we have held that the initial custody determination in this case was not governed by the analysis used in parental relocation cases, it nevertheless does involve circumstances where the custodial and noncustodial parents reside in different states hundreds of miles apart. Thus, as in the parental relocation cases, preservation of the familial relationship between the minor child and the noncustodial parent is an important objective in the exercise of the court's equity jurisdiction. In the absence of a stipulation or agreement, the fact that the parties were able to agree upon reasonable visitation before custody became a contested issue provides no assurance that they will be able to do so now that the court has resolved the issue in favor of one parent and against the other. Where, as here, a noncustodial parent of a child who resides with a custodial parent in another state requests

á Nebraska court having jurisdiction to specify his or her visitation rights and parenting time, we conclude that it is an abuse of discretion not to do so. Resolution of this issue as a part of the custody determination serves the best interests of the child, the parents, and efficient judicial administration.

The record does not afford sufficient current information about the circumstances of the parties to enable us to fashion a specific visitation order. Accordingly, we vacate that portion of the decree granting Mandy "reasonable rights of visitation" with Taylar and remand the cause for further proceedings for a determination of Mandy's specific visitation rights and parenting time.

### V. CONCLUSION

The judgment of the district court is affirmed in all respects, except that portion of the judgment ordering "reasonable rights of visitation," which is vacated, and the cause is remanded to the district court for the sole purpose of determining the specific visitation rights and parenting time to which Mandy is entitled.

AFFIRMED IN PART, AND IN PART VACATED AND REMANDED FOR FURTHER PROCEEDINGS.