IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MCDONNELL V. MCDONNELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CASSIE J. MCDONNELL, APPELLANT,

V.

SHANE J. MCDONNELL, APPELLEE.

Filed May 13, 2025.    No. A-24-739.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Cassie J. McDonnell, pro se.

Shane J. McDonnell, pro se.

PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Cassie J. McDonnell and Shane J. McDonnell were divorced in February 2020. Several years later, Shane filed a complaint for modification in the Sarpy County District Court. He requested and was awarded sole legal and physical custody of the parties' child, subject to Cassie's specified parenting time. Cassie appeals. Finding no abuse of discretion in the district court's order, we affirm.

## BACKGROUND

In the parties' initial divorce decree, they were awarded joint legal and physical custody of their adopted daughter, Rong Shi McDonnell. Rong Shi was born in another country in 2013; she had severe medical problems when she was adopted at almost 3 years old. When the parties divorced in 2020, regular parenting time was based on a 2-week rotation, during which Cassie had 9 nights and Shane had 5 nights of parenting time. The district court also approved the parties'

- 1 -

agreement for child support, including their stipulation for a deviation from the Nebraska Child Support Guidelines. According to the decree, Rong Shi "suffers from infantile scoliosis; treatment of the same requires travel outside of Nebraska." And "[t]he upward deviation [in child support] shall be used for travel expenses for [Cassie], [Shane], and [Rong Shi] to alleviate those travel costs." Accordingly, Shane was ordered to pay $2,006 per month for child support, which was an upward deviation of $839 per month.

Although not in our record, orders of modification were entered in January 2022 and September 2023. According to a guardian ad litem (GAL) report received into evidence at the current modification trial, the January 2022 modification awarded primary physical custody to Shane, and the September 2023 modification awarded the parties joint physical custody with a "week on week off rotation." And according to Shane's testimony, the September modification also gave the parties joint legal custody.

Shane subsequently filed a complaint to modify in November 2023, seeking sole legal and physical custody of Rong Shi. He alleged that since the September modification order there had been a material change in circumstances warranting modification of the decree. Specifically, the child expressed interest in self-harm; the parties had major disagreements regarding treatment for the physical and mental health of the child; Cassie presented delusional thoughts of paranoia and mania which was affecting the health of the child, and Cassie stated she was no longer taking her medication to control her mental health; the child expressed a preference to primarily reside with Shane and felt that was in her best interests; Cassie was making decisions "based on self-serving interest[s]" rather than what was in the best interests of the child; Cassie was making disparaging remarks and comments to the child about Shane; and Cassie failed to communicate. He further alleged that it would be in the child's best interests to have additional parenting time with him, and for him to be awarded sole legal custody.

In Cassie's subsequent pro se "Complaint to Modify" (viewed as an answer and counterclaim), she also alleged a material change in circumstances since the 2023 modification order. She sought sole legal and physical custody of the child, and a modification of child support.

The district court entered a temporary order on December 1, 2023, granting Shane sole legal and physical custody of Rong Shi, subject to Cassie's reasonable rights of parenting time. After three 3-hour supervised parenting times, Cassie was to have parenting time alternating Fridays from 3 p.m. to Sunday at 6 p.m., and alternating Wednesdays from 3 p.m. to Friday at 3 p.m. The court also suspended Shane's child support obligation.

On July 26, 2024, there was a hearing on the GAL's report. Cassie, pro se, was present and Shane was represented by counsel. The GAL was also present. A recess was taken to give Cassie an opportunity to review the report since attempts to email it to her had been unsuccessful. During that hearing, the district court pointed out that trial was set "in approximately 30 days" and that "we do have the 29th on the date." The court took the GAL's report under advisement.

Trial was held on August 29, 2024. Cassie did not appear at trial, nor was she represented by counsel. The district court indicated that it "requested the bailiff to contact the clerk's office for anything" regarding Cassie; the bailiff informed the court that there were no phone calls or emails from Cassie, nor was the bailiff able to find her by searching the hallway. The court delayed the 9 a.m. scheduled trial time for 15 minutes and then commenced with the proceedings. It also noted

that Cassie had delivered "numerous exhibits" to the court reporter. Shane appeared with counsel. Rong Shi's GAL testified, as did Shane. Several exhibits were received into evidence.

The GAL's report was received into evidence. It stated that the GAL was appointed on May 17, 2024. As part of her investigation, the GAL interviewed Cassie, Shane, Rong Shi, and Rong Shi's therapist; reviewed information provided by Cassie; reviewed information provided by Shane, including a letter and progress/clinical notes from medical providers; and reviewed all pleadings, motions, orders, and journal entries. The GAL met with Cassie in her home in Memphis, Nebraska, which was a "building that used to be a church"; the "main living area [was] the former sanctuary with the bedrooms and living area divided up with bookshelves and dressers." The kitchen had a refrigerator and microwave, but did not have a stove or oven. She also met with Shane and his wife (recently married) in his home in Ashland, Nebraska, which was a "ranch style house on [a] golf course." It had "standard rooms" and was "clean and tidy."

The GAL's report notes that Rong Shi has chronic health conditions, including severe scoliosis, hip dysplasia, problems with her neck, and heart and lung issues. Rong Shi has had multiple surgeries in the past and her medical team was recommending a "VCR" surgery on her spine, a hip surgery, and a neck surgery. However, Cassie and Shane disagreed on the medical and surgical procedures being recommended.

The GAL testified that Rong Shi has a "severe form of scoliosis," "[s]o she walks kind of hunched over" and "[s]he has an issue with some muscle tendons in her neck so she can't turn her head to the right." Rong Shi "also has problems with her hips, and she walks with a walker," she cannot sit in a chair and has to kneel instead of sitting because "[h]er hips won't allow her." "Mentally she is a sharp, funny, witty . . . eleven-year-old girl."

It was the GAL's understanding that pursuant to the parties' joint legal custody neither had decision-making authority, "so one parent [could] veto any medical procedures, or any other legal custody decisions." Cassie and Shane disagreed about Rong Shi's medical treatment, and Cassie had not agreed to any surgeries.

The GAL spoke with Cassie and Shane about surgical treatment. When the GAL spoke with Shane,

> He . . . discussed the surgeries for [Rong Shi] and different recommendations. Some -- the neck surgery, the VCR surgery for her back to help straighten her spine so she's not so bent over. He discussed how it's not healthy for her, her lungs and her heart and her stomach because . . . she's bent over and it squashes all her organs in the middle. . . . [T]he surgery wouldn't make her completely, like, we are. Like, you know, with no scoliosis or any back issues, but it would certainly help the curvature of the spine if she did have that surgery. And we discussed the -- kind of the process of it. . . . They would be in Texas for the surgery. And I think it was about a three-week recovery that they would be down there for some of that as well.

However, according to the GAL's report, Cassie "feels these surgeries are life threatening due to [Rong Shi's] underlying heart condition and that she is a high-risk patient." "Cassie is very worried that [Rong Shi] could die or that she could have paralysis if she has more surgeries." The GAL testified that

[Cassie] has concerns about [Rong Shi's] well-being and how [Rong Shi] would come out of these surgeries. And she also had concerns for herself since she says she has no money. She couldn't travel there. She has no place to stay. So she has concerns for herself as well if [Rong Shi] does have these surgeries.

The GAL also spoke with Rong Shi, age 11 at the time, and "[s]he wants to have the surgeries." She wants the surgery on her neck "so she can turn it because she kind of has to look like she's tilted." Rong Shi also told the GAL that she wanted to have the "VCR surgery" on her back; that she "wants to feel better" and "have more quality of life."

The GAL reviewed and considered a letter from a doctor at the Scottish Rite Hospital for Children in Dallas, Texas, dated November 30, 2023, that was provided to her by Shane; it stated that the "best choice" to treat Rong Shi's severe scoliosis "and gain surgical correction" was "VCR because of her underlying heart and lung conditions." During the GAL's discussions with Cassie, Cassie "was telling me about different doctors they've been to, that this VCR surgery is a concern." However, it appeared to the GAL "that the surgery was recommended approximately five years ago, and it could be done at any time, but doctors recommend that it be done when the child is younger because they heal quicker, not as many problems . . . versus when they're older."

The GAL's recommendation was for Shane to be awarded sole legal custody.

During his testimony, Shane confirmed that he and Cassie had major disagreements regarding legal custody. He said, "Over the last five, seven years we have visited lots of different hospitals. And these are experts in their fields. They make recommendations. And Cassie vetoes those recommendations when we go back home." If he were awarded sole legal custody, he would follow through with recommended surgeries, "[b]ut . . . the only surgery that would ever happen would be surgeries that [Rong Shi] wants to have." He affirmed that he would do what was in her best interests.

Regarding physical custody, Shane testified that "basically between September and November [2023], Cassie had [Rong Shi] seven days in a row, and that's when the intensity and the frequency of the arguments . . . was too much for [Rong Shi]." He affirmed that Rong Shi expressed interest in self-harm and there was an incident where she threatened to take her life when she was in Cassie's custody. Shane believed that Cassie suffered from delusion and was causing harm during the seven-on-seven-off schedule. Since the temporary order, Rong Shi had been living with Shane on a five/two schedule and she was "doing really well." Shane said that Rong Shi "is an amazing young little girl." She "is happy," "friendly," "funny," "witty," and "doing really well at school." Shane believed that a five/two parenting time schedule was in Rong Shi's best interests.

The GAL also discussed physical custody issues with the parties and Rong Shi. Rong Shi was "okay with the schedule they have now with five days with Shane and two days with Cassie," however "she'd rather be at Shane's all the time" because "[i]t's a calmer environment" and "[s]he feels happier there." Rong Shi did not like being at Cassie's because "it stresses her out," "she gets yelled at," "[s]he gets called names," she "doesn't have any privacy," and "her mom records her a lot" and that makes her uncomfortable. Rong Shi "says that her mom wants her to be suicidal, but she is not"; "[s]he loves herself" and "wants an opportunity in life." The GAL's recommendation was for Shane to be awarded primary physical custody, with the five/two schedule.

Shane asked the district court to adopt his proposed order of modification and parenting plan wherein he would be awarded sole legal and physical custody, with specified parenting time for Cassie. Shane also provided the court information regarding the parties' incomes and a proposed child support calculation; however, he was not seeking child support from Cassie and asked the court to do a deviation where neither party would pay child support.

In its September 4, 2024, modification order, the district court found that since the previous September 2023 modification order, there had been a material and substantial change in circumstances warranting a modification of the decree. Specifically, the child expressed interest in self-harm; the parties had major disagreements regarding treatment for the physical and mental health of the child; Cassie presented delusional thoughts of paranoia and mania which was affecting the health of the child, and Cassie stated she was no longer taking her medication to control her mental health; the child expressed a preference to primarily reside with Shane and felt that was in her best interests; Cassie was making decisions "based on self-serving interest[s]" rather than what was in the best interests of the child; Cassie was making disparaging remarks and comments to the child about Shane; and Cassie failed to communicate.

The district court found that modification of custody was in Rong Shi's best interests and awarded Shane sole legal and primary physical custody, subject to Cassie's reasonable rights of parenting time. Pursuant to the parenting plan attached to and incorporated into the order, Cassie was to have regular parenting time alternating Fridays from 3 p.m. to Sunday at 3 p.m., and alternating Wednesdays from 3 p.m. to Friday at 3 p.m. However, Shane "shall have authority to exercise parenting time when necessary to ensure the minor child is available for medical related appointments/surgeries/recovery." Additionally, each parent was to have 2 weeks of uninterrupted summer parenting time. A holiday parenting time schedule was also established.

The district court attached and incorporated a child support calculation to the order but approved a deviation "due to the parties' respective incomes and the distance from each other's location which necessitates funds be used for transportation." "Consequently, the court does not order [Cassie] to pay a monthly child support obligation."

The district court found that Cassie failed to meet her burden and dismissed her "countercomplaint" with prejudice.

Cassie appeals.

### ASSIGNMENTS OF ERROR

Cassie assigns, summarized and restated, that the district court erred by (1) accepting incomplete audio testimony as credible, (2) awarding sole legal and physical custody to Shane, (3) limiting her parenting time, and (4) failing to make "special written findings" pursuant to Neb. Rev. Stat. § 43-2932(3) (Reissue 2016).

### STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, parenting time, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record and will be affirmed absent an abuse of discretion. See *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024).

## ANALYSIS

### AUDIO RECORDING

Cassie claims that the district court erred by accepting incomplete audio testimony as credible. She argues, "Later the child admitted that the recorded evidence used to obtain the Emergency Ex Parte Order did not reflect the truth and was taken out of context, and that she was sorry that the truth had not come out sooner." Brief for appellant at 17. The record before this court does not contain a motion for an ex parte order, an ex parte order, or any audio recording. Further, to the extent that any audio recording was considered by the district court in an ex parte order, that issue is now moot. See *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004) (issue of ex parte temporary custody order only relevant from time it was ordered until it was replaced by order determining permanent custody; therefore, issues pertaining to temporary order were moot and did not need to be addressed on appeal).

### CUSTODY AND PARENTING TIME

Modifying a custody or parenting time order requires two steps of proof. *Mann v. Mann, supra*. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Id.* No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Id.* The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made. *Id.*

The district court found that since the September 2023 modification order there had been a material and substantial change in circumstances warranting a modification, and that it was in the child's best interests to award sole legal and physical custody to Shane. In its modification order, as set forth above, the court specifically found various factors supporting a material and substantial change in circumstances.

Cassie's brief does not challenge the district court's finding that there was a material change in circumstances. Rather, she focuses on the court's finding that it was in the child's best interests to award sole legal and physical custody to Shane, and to award her only 2 days of parenting time each week. She argues that the court's modification order limited her parenting time to "below a minimal standard, violating her constitutional right to parent her child and prohibiting her right to make decisions concerning the medical care and education of her child

- 6 -

without Due Process." Brief for appellant at 6-7. Cassie seeks the restoration of joint legal custody and an increase in parenting time.

The record reflects that the parties disagreed about medical decisions for Rong Shi, and with neither party having final decision-making authority, one party could veto any medical procedure, even those recommended by medical professionals. The "VCR" surgery was recommended by Rong Shi's doctor, and it was the GAL's understanding that a child heals more quickly and has less problems if the surgery occurs at a younger age. Shane testified that he would follow through with recommended surgeries, but only if the surgeries were wanted by Rong Shi.

The record also reflects that after the September 2023 modification, the parties had joint physical custody with a "week on week off rotation." According to Shane, when Cassie had Rong Shi for 7 days in a row, "that's when the intensity and the frequency of the arguments . . . was too much for [Rong Shi]." And Rong Shi expressed interest in self-harm while in Cassie's care. Under the subsequent temporary order, Cassie had parenting time 2 days each week. The GAL testified that Rong Shi was "okay with the schedule they have now with five days with Shane and two days with Cassie," however "she'd rather be at Shane's all the time" because "[i]t's a calmer environment" and "[s]he feels happier there." Rong Shi did not like being at Cassie's because "it stresses her out," "she gets yelled at," "[s]he gets called names," she "doesn't have any privacy," and "her mom records her a lot" and that makes her uncomfortable. Rong Shi "says that her mom wants her to be suicidal, but she is not"; "[s]he loves herself" and "wants an opportunity in life."

Having reviewed the record and considered the best interest factors set forth above, we find that the district court did not abuse its discretion in awarding sole legal and physical custody of Rong Shi to Shane. Although Cassie claims that such an award "prohibits[] the child who is disabled from being eligible for her disability related benefits, and . . . effectively prohibit[s] the child from psychiatric care for the next eight years," brief for appellant at 6, her claims are not supported by any evidence in the record.

As for the 2 days of parenting time awarded to Cassie each week, that was Rong Shi's preference. That schedule also seemed to work better for the child and was recommended by the GAL.

Based on the record before us, we cannot say that the district court abused its discretion in its determination of custody and parenting time.

SPECIAL WRITTEN FINDINGS

Cassie claims that the district court erred by failing to make "special written findings" pursuant to § 43-2932(3).

Section 43-2932 provides in relevant part:

(1) When the court is required to develop a parenting plan:

(a) If a preponderance of the evidence demonstrates, the court shall determine whether a parent who would otherwise be allocated custody, parenting time, visitation, or other access to the child under a parenting plan:

(i) Has committed child abuse or neglect;

(ii) Has committed child abandonment under section 28-705;

(iii) Has committed domestic intimate partner abuse; or

(iv) Has interfered persistently with the other parent's access to the child, except in the case of actions taken for the purpose of protecting the safety of the child or the interfering parent or another family member, pending adjudication of the facts underlying that belief; and

(b) If a parent is found to have engaged in any activity specified by subdivision (1)(a) of this section, limits shall be imposed that are reasonably calculated to protect the child or child's parent from harm. . . .

. . . .

(3) *If a parent is found to have engaged in any activity specified in subsection (1) of this section, the court shall not order legal or physical custody to be given to that parent without making special written findings that the child and other parent can be adequately protected from harm by such limits as it may impose under such subsection.* The parent found to have engaged in the behavior specified in subsection (1) of this section has the burden of proving that legal or physical custody, parenting time, visitation, or other access to that parent will not endanger the child or the other parent.

(Emphasis supplied.)

The district court did not determine that either parent engaged in an activity specified in § 43-2932(1), therefore § 43-2932(3) was not applicable and no special written findings were required.

We note that in this section of her brief, Cassie discusses "recorded evidence" and the denial of a protection order. Brief for appellant at 17. However, those matters are outside of our record and cannot be considered.

CONCLUSION

For the reasons stated above, we affirm the district court's September 4, 2024, modification order awarding sole legal and physical custody to Shane, subject to Cassie's specified parenting time.

AFFIRMED.